# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 18-129V
### Filed: April 26, 2019
UNPUBLISHED

|  |  |
|---|---|
| KENNETH CAPRA,<br><br>                    Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Special Processing Unit (SPU);<br>Findings of Fact Regarding Site of<br>Vaccination; Influenza (Flu) Vaccine;<br>Shoulder Injury Related to Vaccine<br>Administration (SIRVA) |

*Shealene Priscilla Mancuso, Muller Brazil, LLP, Dresher, PA, for petitioner.*
*Ashley Monique Simpson, U.S. Department of Justice, Washington, DC, for respondent.*

## ORDER AND FACT RULING[1]

**Dorsey**, Chief Special Master:

On January 26, 2018, petitioner filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*,[2] (the "Vaccine Act"). Petitioner alleges that he suffered a Shoulder Injury Related to Vaccine Administration ("SIRVA") as a result of receiving an influenza ("flu") vaccination on October 29, 2016. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] The undersigned intends to post this decision on the United States Court of Federal Claims' website. **This means the decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access. Because this unpublished decision contains a reasoned explanation for the action in this case, undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

On November 19, 2018, respondent filed a status report stating that proof of petitioner's flu vaccination administration in his right arm remains outstanding.  ECF No. 20.  Further, respondent noted that the vaccination record filed indicates that petitioner received a flu vaccine in his left arm.  *Id.* at n.1.  For the reasons described below, the undersigned finds there is preponderant evidence sufficient to establish petitioner received the October 29, 2016 flu vaccination in his right injured arm.

## I.      Procedural History

On January 26, 2018, petitioner filed a petitioner for compensation and medical records.  *See* Exhibits 1-7, ECF No. 1.  Petitioner later filed an affidavit on March 28, 2018 (ECF No. 8), updated medical records on May 8, 2018 (ECF No. 10), and a Witness Affidavit on May 29, 2018.  ECF No. 11.

On November 19, 2018, respondent filed a status report stating that the vaccination record indicates that petitioner's flu vaccination was administered in his left arm, however the petitioner alleges a right-shoulder SIRVA.  ECF No. 20.  A status conference was held on February 15, 2019 to discuss the parties' respective positions. ECF No. 21.  Respondent indicated that the location of petitioner's flu vaccination may be an issue the Court needs to weigh in on, and petitioner agreed to file a Motion for a Ruling on the Record.  *Id.*

Petitioner filed a Motion for Fact Ruling on the Record on March 25, 2019 ("Pet. Br."), and respondent filed a response on April 8, 2019 ("Res. Br.").  ECF Nos. 23, 24.

Petitioner's motion is now ripe for adjudication.

## II.     Factual History

### A.  Medical Records

On Saturday, October 29, 2016, petitioner received a flu vaccination at Rite Aid pharmacy.  Ex. 1.  The vaccination record states that the immunization was administered in petitioner's left upper arm.  Ex. 1 at 2.

On November 1, 2016, petitioner presented to Easter Seals Colorado.  Ex. 2 at 7. Petitioner's medical provider stated "[petitioner] received his flu shot Saturday, c/o pain at site of R bicep – feels slightly more swollen and hard than L bicep…. Advised heat to site and arm exercises."  *Id.*

On November 14, 2016, petitioner presented to Dr. Sara Volkmar with complaints of right arm pain.  Ex. 3 at 11, 13.  Dr. Volkmar noted that petitioner received a flu vaccination two weeks earlier, and "ever since he got his flu shot he has had R[ight] shoulder pain".  Ex. 3 at 13-14.  Dr. Volkmar also noted that "[petitioner] has rotator cuff

pathology, bursitis, tendinitis, or similar" and that petitioner "feels that the flu shot was the inciting incident." *Id.* at 14.

Petitioner again presented to Easter Seals Colorado on November 29, 2016. Ex. 7 at 2.  Petitioner's medical provider noted "[petitioner] remains unable to fully raise R arm after flu shot…."

Petitioner again complained of ongoing right shoulder pain on December 5, 2016 to Anthony Euser, D.O.[3]  Ex. 3 at 8-9.  At that time, petitioner reported pain in his "R[ight] shoulder post flu in[j]ection into deltoid."  *Id.* at 8.[4]

From December 19, 2016 through October 20, 2017, petitioner attended physical therapy and occupational therapy sessions for pain in his right upper arm at Easter Seals Colorado.  *Id.* at 9-10, 17-18, 25-26.

Petitioner underwent a right arm NCS/EMG on January 26, 2017.  Ex. 3 at 57-60. At that time, petitioner complained of "weakness and pain in his right [shoulder].  He says it started in 10/2016 after getting a flu shot."  Ex. 3 at 57.  The NCS/EMG was normal.  *Id.*

On March 9, 2017, petitioner presented to Dr. Lyndsey Hale of Blue Sky Neurology with complaints of right arm pain.  Dr. Hale noted that petitioner "reports getting a flu shot in his right arm in October 2016.  Since then, he has continued to have right arm pain."  Ex. 5 at 4.  Dr. Hale assessed petitioner with right shoulder pain, and stated his "symptoms may be musculoskeletal or joint related.  Localized trauma from his flu shot could also be possible."  *Id.* at 5.  Petitioner later underwent an MRI of his right shoulder on June 1, 2017.  Ex. 3 at 54.

On April 17, 2017, petitioner began physical therapy at Altitude Physical Therapy and Sports Medicine.  Ex. 4 at 14.  Petitioner reported "pain in R[ight] shoulder beginning 10/2016 after a flu shot.  He had intense pain immediately during the shot that has not improved."  *Id.*  Petitioner attended eight physical therapy sessions between April 27, 2017 and July 6, 2017.  *Id.* at 4-23, 30-31.

Petitioner again complained of ongoing right shoulder pain on June 23, 2017 to Anthony Euser, DO.  Ex. 3 at 3-5.  At that time, petitioner reported pain in his right shoulder, and that he "[h]as noted since injection in 2016".  *Id.* at 4.

---

[3] D.O. stands for Doctorate of Osteopathic Medicine.  Unless a particular degree is specified the first time an individual is referenced, it is assumed any individual with the title of "Dr." has earned a Doctor of Medicine (M.D.).  Doctors who have earned a D.O. may have received different training but have similar privileges and responsibilities as doctors with an M.D.

[4] The record appears to have a typographical error in that it states petitioner has right shoulder pain "post flu in*f*ection into deltoid." Ex. 3 at 8 (emphasis added).

On July 14, 2017, petitioner complained of right shoulder pain to Dr. William Ciccone.  Ex. 6 at 1.  Petitioner stated that he "had a flu shot back in October of 2016 where he felt they put the injection high on his shoulder….  Since that time, he has had pain with reaching and lifting."  *Id.*  Petitioner also recorded "Flu shot" on the intake form under the heading for "What Happened".  *Id.* at 43.  Petitioner saw Dr. Ciccone on two additional occasions, August 25, 2017 and October 13, 2017.  *Id.* at 9-12, Ex. 9 at 1-5. Both times he complained of right shoulder pain.  Further, on August 25, 2017, petitioner was assessed with "impingement following vaccination."  Ex. 6 at 11.

### B. Petitioner's Affidavits

In his affidavit, which was signed and notarized on January 12, 2017, petitioner stated that he received a flu vaccine in his right shoulder on October 29, 2016.  Ex. 8 at 1.

Petitioner also filed an affidavit of Norma Kaholo, who has known petitioner for 3 years through the Easter Seals Foundation.  Ex. 10 at 1.  Ms. Kaholo stated that she picked up petitioner the first week in November of 2016, and recalled he "had a hard time with movement in his right arm…."  *Id.*  Ms. Kaholo also specified that petitioner "stated he received a flu shot at Rite Aid over the weekend and thinks something is wrong."  *Id.*

## III.    Party Contentions

In his motion, petitioner notes that his affidavit states he received a flu shot in his right shoulder.  Pet. Br. at 6.  Petitioner also argues that the medical records consistently note he complained of right arm pain, that the records link the arm pain to his flu vaccination, and that certain records specifically state his arm pain may be due to his flu vaccine.  Pet. Br. at 6-7.  Petitioner recognizes that the vaccination record indicates the flu vaccine was administered in his left arm, but stresses that record is an exception.

Respondent argues that the most contemporaneous medical record, petitioner's actual vaccination record, states the flu shot was administered in petitioner's left arm. Res. Br.  at 3.  Further, respondent notes that, despite petitioner's statements and reports to his physicians, a factual finding may not be based on the claims of a petitioner alone, unsubstantiated by medical record or medical opinion.  Res. Br. at 3.

## IV.    Findings of Fact

### A.  Legal Standard

A petitioner must prove, by a preponderance of the evidence, the factual circumstances surrounding her claim.  § 13(a)(1)(A).  Under that standard, the existence of a fact must be shown to be "more probable than its nonexistence."  *In re Winship*, 397 U.S. 358, 371 (1970) (Harlan, J., concurring).

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony.  *See Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed.Cir.1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records).  As the Federal Circuit has noted, it is appropriate for a special master to give greater weight to evidence contained in medical records created closer in time to the vaccination, even if the information is provided as part of a medical history.  *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993) (medical records are generally trustworthy evidence).  The Circuit Court explained that

> Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events.

*Id.*

Additionally, when determining the impact of the evidence presented, the special master should consider factors such as the reliability and consistency of the evidence. *Burns,* 3 F.3d at 416.  "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent.  If a record was prepared by a disinterested person who later acknowledged that the entry was incorrect in some respect, the later correction must be taken into account."  *Murphy v. Sec'y of Health & Human Servs.*, No. 90-882V, 1991 WL 74931, at *4 (Fed. Cl. Spec. Mstr. Apr. 25, 1991), *aff'd*, 23 Cl. Ct. 726 (1991), *aff'd per curium,* 968 F.2d 1226 (Fed.Cir.1992).

### B.  Site of Vaccination

There is consistent evidence throughout the medical records sufficient to establish petitioner received the flu vaccination in his right arm.  When seeking treatment for his right arm/shoulder pain, petitioner regularly attributed his condition to the flu vaccination he received in his injured right arm.  Not once does petitioner indicate that he received the vaccination in his left arm or seek treatment for any left arm injury.

On November 1, 2016, three days after petitioner's vaccination, he reported that he received a flu shot and there was pain at the site of his right bicep.  Ex. 2 at 7. Petitioner saw Dr. Volkmar on November 14, 2016, when he again linked his right shoulder pain to his flu shot.  Dr. Volkmar noted that "ever since petitioner got his flu shot he has had R[ight] shoulder pain…."  Ex. 3 at 13-14.   At that time, Dr. Volkmar also noted that petitioner felt "the flu shot was the inciting incident" to his shoulder pain. *Id.* at 14.

Thereafter, between December 5, 2016 and August 25, 2017, petitioner repeatedly linked his right shoulder pain to a flu vaccination in multiple medical visits with at least six different medical professionals.  *See, e.g.*, Ex. 3 at 8 (a December 5, 2016 medical record noting petitioner reported right shoulder pain "post flu injection in deltoid"); Ex. 3 at 57 (a January 26, 2017 record noting petitioner complained of pain in his right shoulder that "it started in 10/2016 after getting a flu shot"); Ex. 5 at 4 (record from March 9, 2017 noting that petitioner "reports getting a flu shot in his right arm in October 2016" and "[s]ince then, he has continued to have right arm pain"); Ex. 4 at 14 (physical therapy records stating that petitioner reported "pain in R[ight] shoulder beginning 10/2016 after a flu shot"); Ex. 3 at 4 (medical record from June 23, 2017 stating that petitioner reported pain in his right shoulder "since injection in 2016"); Ex. 6 at 11 (an August 25, 2017, record showing that petitioner was assessed with right shoulder "impingement following vaccination").

Respondent correctly observes that this information was provided by petitioner, but he did so close in time to the vaccination, for the purpose of obtaining medical treatment.  Moreover, the recorded observations from the Easter Seals Colorado corroborate the information provided by petitioner.  Records from the November 1, 2016 visit show that petitioner's right arm was more swollen and hard than his left arm.  Ex. 2 at 7.  Further, petitioner sought and received treatment only for a <u>right</u> shoulder injury.

The only evidence in this case which contradicts petitioner's claim that he received the vaccination alleged as causal in his right injured arm is the record of vaccination.  *See* Ex. 1 at 2.  However, when the record is viewed in its entirety, the preponderance of evidence, including numerous medical records and affidavits, outweigh the single contradictory record in this case.

For all of the above reasons, the undersigned finds there is preponderant evidence showing petitioner received the flu vaccination alleged as causal in his right injured arm.

## V.     Conclusion

In light of the undersigned's finding that petitioner received this vaccination in her right injured arm, petitioner's motion is granted.

Accordingly, the following is ORDERED:  **Respondent shall file, by no later than Monday, May 27, 2019, a status report indicating how he intends to proceed**

**in this case**.  At a minimum, the status report shall indicate whether he is willing to engage in tentative discussions regarding settlement or proffer or is opposed to negotiating at this time.  In the event respondent wishes to file a Rule 4(c) report, he may propose a date for filing it, but shall indicate his position on entering into negotiations regardless of whether he wishes to file a Rule 4(c) report.

**IT IS SO ORDERED.**

<u>**s/Nora Beth Dorsey**</u>
Nora Beth Dorsey
Chief Special Master